Our first case up this morning is 4-12-0239 People v. Shaffer. For the appellant is Catherine Hart. You are she, Ms. Hart? Okay. And for the appellee is Denise Ambrose. Okay. Ms. Hart, you may proceed. Ms. Hart May it please the court, counsel, my name is Catherine Hart from the Office of the State Appellate Defender, and I represent the appellant Keith and Shaffer. The central question presented by this case is, did the defendant's trial attorney commit multiple errors during Keith and Shaffer's trial? And if there were errors, would the results of trial have been different, but for trial counsel's errors? The answers to both of these questions is yes. During the course of Keith and Shaffer's trial, the following evidence was elicited. On the night in question, Keith and Shaffer was driving a maroon 2005 Ford Taurus that had been reported stolen when he was in the Taco Bell drive-thru in Quincy. The police approached the car, and at that time a passenger jumped out of the back of the car, it was Keith and Shaffer's brother, and ran away. When the arresting officer approached the car, he heard the front seat passenger say, what's going on? And Keith and Shaffer said, the car is stolen. Subsequently, Keith was placed in the police car, and he in an unsolicited statement said, the car was unlocked and the keys were in it, and I was only joyriding. At trial, Keith then testified that he did not know the car was stolen until his brother jumped out of the car, and that he did not steal the car. On February 17, 2011, the jury took place in a half a day. At 830 in the morning, the jury selection process started, and by 1230, the entire process was over, and the jury was sent back to deliberate. At 305, a jury note came out from the jury that asked, is there any distinction to be made concerning the amount of time that has lapsed from the time knowledge was gained? Example, seconds, minutes, hours, days, etc. At 430, the jury returned a verdict of guilty as to the charge. The ineffective assistance of counsel claims are in Justice Washington's test, which asks, were counsel's actions outside the range of professionally competent assistance, and if so, whether those actions prejudiced the defendant? Trial counsel in this case made three errors. The first error was to concede that the criminal trespass instruction was not warranted during jury instruction conferences. The second was to concede that the state could impeach Keith and Schaefer with his sentences as well as his convictions if he testified at trial. And the third error was to concede that the jury instruction on voluntary possession was not warranted following the jury's question during jury deliberation. These three errors so impacted the course of the trial that but for trial counsel's errors, this jury's verdict would have been different. Counsel, you talk about the errors impacting the trial, but for those errors it would have been different. And so that really brings us to the issue of was there prejudice. Is that correct, if we assume those errors were errors? That's correct, Your Honor. And given the fact that your client gave information to the police as to the state of the vehicle at the time that it was stolen, the fact that he indicated he was joyriding, the fact that he told his passenger that the car was stolen when she asked what was going on, can you really show prejudice? I mean, isn't that a pretty strong case for the state, even if those errors had not occurred or occurred? I think at this trial, actually, that there's sufficient evidence to show that it was closely balanced. And this jury struggled with coming back with a verdict. At 8.30, they started picking a jury, and by 12.30, the entire trial was done. And before 12.30, 12.30 is when the jury went back for deliberations. And it still took them four hours. And halfway through, they had a question as to whether how long he knew, would it matter how long he knew the car was stolen, which indicated that they believed his testimony, or at least might have believed his testimony that he didn't know the car was stolen until around the time that his brother jumped out of the car. So what was the mistake the defense attorney did at that point? Not asking for the additional instruction from IPI? The first error was that the trial attorney agreed with the state's assertion that criminal trespass to a vehicle was not warranted. No, no, no. I asked that the... Are you referring to the third error? Yes, the one... The voluntary possession. The note comes back from the jury that you were just referring to. What should the trial lawyer have said? The trial lawyer... The state, actually, was the one who mentioned this instruction, and the trial lawyer should have argued that, yes, we should respond to the jury with this additional jury instruction, rather than simply saying... This strikes me as the Monday morning quarterback. It seems to me, as Justice Holder-Royd pointed out, this is a very strong case against your client, yet somebody in the jury was troubled. At least one person, apparently, was not prepared to sign the guilty verdict. You're looking at a panel composed of some 35 years' worth of trial court experience as a trial judge, and I know that when the jury sends out a note, that's reflection of at least the fact that they're not prepared to render a verdict at that time. Wouldn't you agree that a hung jury, in this case, would have been a victory for your client? A hung jury would have been a positive outcome. Here's my point, as you're second-guessing what the defense attorney should have done. The jury sends out a note saying, you know, what about all this and the like? It seems to me, tactically speaking, from the defendant's point of view, it's just as well if the judge doesn't answer, just as well if the judge provides no clarification at all. Maybe that juror or the jurors who are hung up, who are not yet prepared to sign a guilty verdict, won't. Isn't that possible? I believe in this case, actually, that the jury question indicated that the jury had some confusion as to how long did he have to know? Let's assume you're right. Why would the defense attorney want to have the matter clarified and help the jury get rid of the confusion? Because in this case, if the jury believed Keith and Schaefer, that he didn't know that the car was stolen until his brother had jumped out of the car, then the length of time that he knew that the car was stolen and had possession of it was relevant. So an answer to the question would have been helpful to get a not guilty verdict. Why do you think the defense attorney thinks that's going to be likely, given the evidence presented in this case? How about a hung jury? I don't agree that this was an overwhelming evidence case. I believe that the evidence in this case was closely balanced. If it's closely balanced, how do you explain his remark in a police car about how he knew that the keys were left in the car? Well, we don't know what his brother told him before he jumped out of the car. We don't know. That's not in evidence at trial. But we do know that he didn't indicate to the officer that those were things that his brother told him. We know that much, correct? But he does not have an obligation to offer that information. Sure, but he did not. He did not. That's correct. He said, I was joyriding. The car was unlocked and had the keys in it, so I was just joyriding. That is his statement. And that actually goes to the first error, which is that this case should have had a criminal trespass to a vehicle instruction given. There was sufficient evidence at trial. Even if there was conflicting evidence, you can still give that instruction as long as there's slight evidence to— What decision would it be whether a lesser-included instruction, assuming for the moment it's lesser-included, should be given? It is the defendant's decision, but in this case, the attorney had a misunderstanding as to the law of the case, and so had no conversation with Keith and Schaefer. How do we know that? Because it's in his post-trial motion. He alleges in his post-trial motion that his attorney never discussed with him the giving of a lesser-included instruction. And so, on top of which, we know that the attorney misunderstood that he also thought that criminal trespass was not warranted, and so he would have had no reason to discuss giving a lesser-included instruction in this case because he didn't think that one was allowed under the facts. Let me just ask you here, when we're talking about the Strickland analysis, you talked about the—or it was discussed, the two prongs. You were talking earlier about the prejudice prong of it, but really, where I'd like for you to hone in on right now is the error part of it, the trial attorney's performance at trial. What do we know? What is in the record about why the trial lawyer did what he did in each of those three circumstances that you suggest were ineffective assistance? What is there in the record that we can look to that would be the trial attorney's explanation as to why he did what he did? Well, as to the first error, he agreed with the state's conclusory assertion or statement after the defendant testified that a criminal trespass to a vehicle instruction was not warranted. And so that is why, presumably, he did not discuss with Keith and Schaefer the giving of a lesser-included instruction. Well, now, pausing right there, that's the second time you've said that. Are we or is the trial court bound to accept the claim of the defendant in his written post-trial motion that my lawyer never discussed a lesser-included instruction with me? But that is the evidence that was before the court. Was his assertion— Well, why is that? I mean, after all, wasn't there a new counsel appointed to represent Mr. Schaefer at a post-trial hearing on this very subject? There was a new counsel, and he, in fact, is the one who filed the post-trial motion. Am I correct that there's no longer an attorney-client privilege? In that case, there would be no attorney-client privilege. So why wasn't—his name is Farmer, the defense attorney at trial? I don't know why Mr. Farmer wasn't called. What we do know from the record, in answer to Justice Harris's question, is that during the trial, the conversation that the state and defense counsel had with the court indicated that neither the state nor defense counsel believed that a criminal trespass instruction was warranted under the facts of the case. Well, how about as a matter of law? Ms. Ambrose is still under, apparently, the mistaken belief, as you describe it, that criminal trespass is not a lesser-included charge to possession of a stolen motor vehicle. I believe that the state at trial conceded that— I mean, there's a two-step process to determine whether you give a lesser-included instruction. The first is the charging instrument approach, which is, does the charging instrument— Isn't that the law in Illinois now? Yes, that is the law. There's no question about that. Ms. Ambrose argues that it's not. I believe that Ms. Ambrose is incorrect. Well, there's no specific law— there's no specific case from an appellate of the Supreme Court that says, by the way, criminal trespass to a vehicle is a lesser-included offense to PSV. Isn't that right? There are appellate court cases that have found criminal trespass to a vehicle to be a lesser-included offense of unlawful possession of a stolen motor vehicle. The issue, really, at trial was the second part of the test, which is, first, it has to be laid out in a broad outline by the charging instrument, but the second is, were the facts that were deduced at trial support the giving of a lesser-included instruction? And that's really where the state defense counsel— What about the entering the vehicle element? Well, actually, criminal trespasses enter or operate. And so there's an or there. So in this case, it would be operating. He was driving the vehicle. Well, the trial court found, in its written order, that this very well could have been a sound defense tactic to not request a lesser-included instruction and go with the all-or-nothing approach. A lesser-included instruction would have allowed the jury to come back with a guilty verdict for something less than what the defendant was eventually convicted of. Might have done that in this case, but who's to say that it wasn't a legitimate defense tactic to forego a lesser-included instruction here and go with the all-or-nothing approach, counting on the jury not being able to convict the defense— or the defendant on the evidence presented. In this case, where a trial attorney did not believe that criminal trespass— that criminal trespass jury instruction was warranted on the facts of the case, there would be no reason for him to have any strategy about whether to tender it or to even discuss that with his client, because, in fact, he didn't believe that he could tender it. Well, counsel, do we really have enough on this record to make the determination as to whether or not counsel was deficient? We don't know what led to counsel making that statement to the court with respect to that instruction, correct? I believe that there is enough in the record, but if this court chose to remand it for a limited hearing on this issue, I think that that would be a viable solution, as well. But I do believe, on the facts of this case, because trial counsel clearly did not think that the instruction was warranted, he would have had no reason, and as Keethan Schaffer alleges in his motion, did not discuss the giving of the lesser-included. His second error, which was to not come up with any case law or after initially saying no, when the state said, we would like to impeach Keethan Schaffer with his sentences as well as his convictions, is clearly error. Since 1976, when the Illinois Supreme Court said that you're not allowed to do that, there simply is no excuse or reason for him to have not done minimal case law search and found that case. Do you think that standing alone would warrant reversal on ineffective assistance? In this case, where the reliability and the defendant's testimony was very important. It was the linchpin of the defense case, and for him... But that doesn't take away the fact that they knew he was a convicted felon, right? They would have still been able to impeach him with his conviction, but the additional fact that the impeachment, the fact that he had a sentence to the Department of Corrections, and that he had dissatisfactorily been discharged from probation, both of those things are bad facts, which should not have come in. Period. So that certainly, cumulatively, these errors had a huge impact in this trial, because this was a case of who do you believe? Do you believe the defendant when he testifies and says, I didn't know the car was stolen until my brother jumped out of the car and ran away? But counsel, they could also believe what your client said in the back of the car and what he said to the passenger, right? That was your client's testimony, your client's statements. Well, his saying to the passenger, the car is stolen, doesn't refute his assertion that he didn't know the car was stolen until his brother jumped out of the car, because... It could be looked at a couple different ways, can't it? I mean, he didn't say, it's probably stolen, or I think my brother stole it. I got this car from my brother and he probably stole it. He said, the car is stolen. It could be looked at different ways. That's true, Your Honor. This, again, because this was an incredibly short trial, the deliberations really were longer than the trial. And so the jury was clearly struggling with who to believe and whether to convict him. Based on how long he knew the car was stolen. What do you make of the fact that, as to the impeachment of your client with his prior felonies, it wasn't the state that brought up the sentences, it was the defense? That is a legitimate trial strategy to... Degeos, I'm not sure I'm pronouncing that correctly, actually even talks about that in that case, where the fact that defense counsel brought it out on direct instead of on cross is not the problem. If defense counsel had simply brought out the convictions and not the sentences, that would have been okay, given that the trial court had already decided that he was going to allow the state to impeach him with his prior convictions. The issue is that he did not fight using the sentences as well as the convictions to impeach Keith and Schaefer. You mentioned earlier about the statement the defendant made in the police car about the cars being in the car and the doors unlocked, which is something that strongly suggests only the person who actually stole the car would knew. When I asked you about that, you said, well, maybe his brother stole the car and told him. The problem with that, it seems to me, counsel, is that he testified at some length on both direct and cross examination about that statement and never said, by the way, my brother told me about that. He was not allowed to testify as to what his brother told him. The state objected to when he started to say what his brother said, the state objected. Do we have an offer of proof on any of this? We did not have an offer of proof. So we don't know what that testimony would have been. We don't know, but he did try to testify as to it. He was willing to offer that information. Your client's version of this is he didn't know the car was stolen. He thought that it was his brother's girlfriend's car or her family's car. He wasn't sure who owned the car, but it was somebody related to his brother. So when he's arrested, the police officer finds on his person a bottle of cologne that the owner of the car identified as his and that had been in the glove box. So the jury was presented with evidence that the defendant had on his person the bottle of cologne from the glove box. He took this bottle of cologne from the owner of the vehicle. Is that right? Your Honour, I see my time is up. You can respond. We don't know what the circumstances with the cologne were. We don't know if his brother gave him the cologne and said, hey, I know you like cologne. We don't know. There's no explanation. What we do know is that this jury struggled with this verdict. Thank you, counsel. You have an opportunity to address this again in rebuttal. Ms. Ambrose? May it please the Court and counsel. Counsel? Ms. Hart has suggested that this court remand this case for a limited hearing, an evidentiary hearing. Well, the defendant had a chance to substantiate the claim of ineffectiveness  I'm not aware of that. I'm not aware of that. to the trial court, and that was limited to one issue. That was whether or not Farmer consulted with the defendant about the decision not to tender an instruction for criminal trespass and whether that was error. So he's had a bite of the apple at that issue. So this court can the record is for what he presented, which was nothing. He simply set forth the allegations in the motion, and then he didn't substantiate it. He had new counsel, and Nelson wasn't... He had full reign to prove through Farmer's testimony or through the defendant's testimony that there wasn't the consultation. So Medina states that the assumption from this record is that there was that consultation and that the defendant acquiesced to this decision, because any time a lesser included is given, you're exposing your client to additional liability. So your suggestion is we can disregard the claim in the defendant's post-trial motion that his trial counsel, Mr. Farmer, never discussed this with him? Yes, absolutely. And if you have a post-trial motion regarding matters that are outside of the record, you have to substantiate it either with the affidavit or with the defendant's testimony. You can't just rely upon the allegations in the motion itself. Was the post-trial motion verified by the defendant? No, not that I recall. These are just allegations? They're allegations, and that's what it remained, because he didn't bother to present any testimony or any affidavit. Ms. Ambrose, you've done this for a long time and you've done a fine job defending the state at the appellate level, and this leads into my question about the thing I find most troubling about this case. How is it that the state's attorney didn't understand the rule, which, as Ms. Hart pointed out, is decades in length, that you don't bring out a defendant's sentence when you impeach him with a prior conviction? Well, that's a no-no. I couldn't find anything to say that the jury should know about the sentence or the trier of fact, but as a practical matter, a jury knows that you either get a community-based sentence or you're incarcerated. Well, that's true, and I suppose that would tend to mitigate the damage with regard to if you're a convicted felon, something's going to happen. It's not a good thing. But what is even more troubling about it is the probation that was discharged unsuccessfully. It sounds like it could be a probation revocation and a prison sentence, whatever that is. It's almost like it's a third conviction because it would strongly suggest to the jury that this defendant engaged in more misconduct of some nature to be deemed to have unsuccessfully completed his probation. Well, it could have been a technical violation. Yes, but the jury doesn't know that. It could have been another criminal matter. And the whole point is, how is it that John Barnard, the state's attorney of Adams County, is making this argument to the court? Well, that question I can't answer. Certainly, the jury should not have learned about it, but they were given the appropriate instructions, so they knew this is only relevant with regard to credibility. So your position is it's error, but not enough to meet the Strickland standard to demonstrate to receive ineffective assistance? You can't meet the second prong. I mean, it really wasn't a credibility contest because the defendant provided so much of the information, telling the police officer first that I was just joyriding, the keys were in the car, the car was unlocked. That's inconsistent with his later testimony that I didn't realize it was stolen until my brother took off running. Now, how does he know that his brother taking off running upon the approach of a police officer... Ms. Ambrose, let me interrupt you before you get too far down the weight of the evidence path here and just sticking momentarily with what Justice Steigman was talking about, and that being the assertion that credibility could be based or impeached on the sentence. Sure. Sequentially, isn't it true that testimony in regards to defendant's sentences didn't come about until redirect? That's correct. So defense attorney conducts a direct examination of defendant and doesn't bring out the prior convictions or sentences at that time, correct? Right. The state cross-examines the defendant and the convictions and sentences don't come out on cross-examination. Is that right? Yes. Okay. And it's only upon redirect that the defendant's attorney brings out these sentences. Is that right? Yes, he fronts the convictions. So in terms of the conference that occurred with the court and whether or not sentences could be delved into and the prejudice prong of Strickland, it doesn't happen until redirect. And if someone wishes to claim ineffective assistance, maybe the defense attorney was ineffective in bringing it up on redirect, where if no redirect had even been engaged in, neither the conviction nor the sentence for either of the two felonies would have come out, would it? Well, that's not true. The state was intent upon impeaching him and he wanted to reveal the convictions rather than have the state do that because he kept telling the jury when he was eliciting this testimony from the defendant, let's be completely above board, we want to tell them everything that they need to know, let's be upfront about your past record, and that was made to garner points with the jury. Certainly. You think it was calculated that it was done on redirect as opposed to direct? Well, perhaps he forgot on direct, but in any event, he knew the state was poised to impeach him and he didn't want that to occur because the court had given the green light after conducting the Montgomery test, so he knew it was coming. That part, I think Catherine agrees that that part was okay to reveal the convictions, but the sentences, that certainly is information that the jury should not have learned. Of course, Ms. Ambrose, I'm not so sure that we can speak with confidence about that. What were the two prior convictions of this defendant? Possession of methamphetamine precursors and burglary, and the burglary, he was sent to DOC, and the methamphetamine, he got probation. Now, again, had the defense position been, Judge, none of this is sufficiently probative, you have the discretion to let in any of these prior convictions as you deem appropriate, and we're going to object to both, but certainly, if you're going to let in any, there's no need to let in two. As a trial judge, I can't speak necessarily for my colleagues, but I wouldn't be surprised if they agreed, you know, I suspect that that might have, that argument might very well have worked. That is, okay, we'll let the jury know that he's got something, as opposed to, you know, the defeated candidate for president of the Rotary Club, but nonetheless, maybe would have kept out both, but when the defendant makes no such request, makes no objection to the state's efforts, then it's a guarantee we're going to have both convictions before the jury. Well, you're bringing up an instance of what could be ineffectiveness in a post-conviction proceeding that hasn't been presented on direct appeal, and of course, this court is confined to what the defendant raises. The record's just not sufficient enough, which brings you to the point that most ineffective assistance of counsel issues are considered on in post-conviction proceedings because you have the opportunity to make the complete record, have an evidentiary hearing if it gets that far, and we don't have the benefit of counsel's thinking in this case. We had Ms. Hart also argue about his criminal trespass to a motor vehicle, lesser included. As I recall in your brief, you argued that it is not. No. Using the charging instrument approach, and I've always had difficulty with this, determining whether there's a broad outline in the information, but there's no indication in the information that he, without authority, knowingly entered and operated a vehicle, knowing it to be... well, excuse me, knowingly entered and operated it, and that's the required elements for criminal trespass. It's possible that you can constructively possess a vehicle without entering it. So the information just set out the elements of possession of a stolen motor vehicle. And even if you did have the foundation in the charging instrument, the second part of the test, he can't get past. That is that the evidence would not rationally support a conviction for criminal trespass and an acquittal for unlawful... or unlawful possession of a stolen motor vehicle, because it shows that he's the one that stole it. I mean, certainly the statement that how he found the car with the keys in the ignition and the doors unlocked. Of course, that's how Mr. Rudd said he left the vehicle. And then he also said, I was just joyriding. And joyriding connotes a very brief instance of using a vehicle where this guy had had it more than 48 hours, and there was no indication that he ever intended to return it to Mr. Rudd. And it was just fortuitous that an officer happened to see the car in a drive-thru, and he has Rudd's cologne on his person. I mean, he rifled. He had to have rifled through the glove compartment where Rudd kept the cologne. And if he truly thought that this vehicle belonged to his brother's girlfriend or her family, it's unlikely that he would have done such a thing. Is there evidence that he possessed the vehicle for the 48 hours? Well, that's certainly an inference that the jury can make. If he's the one that stole the vehicle, and there is a solid evidentiary foundation for that, even if he's not actually using the vehicle, he's still in constructive possession of it. Was there any evidence that the brother possessed it at any point during that time? Well, when he was sitting in the car, he's in constructive possession if he knows that... And I understand the distinction you're making, but was there any evidence, say, during the defendant's testimony that the brother was driving the car at any point? Well, the brother drove the car to... The defendant had just sold his car to a person he couldn't recall his name, and then he found out his brother was looking for him, and Lucas, the brother, shows up at his friend's house in this vehicle. So yes, the brother is... Lucas is driving the car. Did the brother testify? No. Did the girlfriend testify? No. It was the testimony of three people at this trial. The two state's witnesses, Rudd and the police officer, and then the defendant. I earlier asked Ms. Hart about the question from the jury in the response, speculating that from the point of view of defense attorney, a question from the jury indicates that someone, at least one person, is not ready to sign a guilty verdict. In a case of this kind, I think a hung jury certainly would have been a positive outcome for the defendant given the strength of the state's case. So I could speculate how a defense attorney would want to essentially say to the court, no, Judge, let's not say anything other than the standard, you have all the instructions you're going to get and need, please continue the deliberations. A response you and I have seen a lot of in cases like this. What's a little troubling is that's not quite all that the court said. The court said, in addition, that you already have a definition of a possession and time is not an element. It's that last part that's troubling and I'm not so sure that that fits into a scenario of why defense counsel would want that information given to the jury other than maybe he thought that was less damaging, as in less clarifying than the IPI instruction on possession would have been. Again, you're looking at something that hasn't been raised on appeal with regard to the actual response that the court gave. She did say that this was an error on his part and that was part of the ineffectiveness to not want the jury to get this further clarification and that was bad. I don't know if you can bootstrap that additional argument into this, but really the issue in this case was knowledge. It wasn't voluntary possession. I've cited a case in Bowie where it was very similar to this where somebody was in possession of a box that contained pills that were ecstasy and the police had already obtained the box and put some sort of tracking device so they knew exactly when he opened the box and the court said that that was not the issue, that time was not the issue. It was whether or not he had knowing possession. And the same obtains in this case that if the jury really believed that the defendant was unaware that the vehicle was stolen, then they couldn't have found that he was in unlawful possession of it. Are there any other questions from the court? Thank you. Thank you, counsel. Ms. Hart? On this last question as to the third error alleged, the error with not giving the jury instruction about voluntary possession  because the jury's question clearly indicates that they had issues with when he learned the car was stolen. Whether we or you may think that that confusion shouldn't exist because of other testimony, the question exists because the jury had a question as to how long did he have to know the car was stolen, how long did he have to possess it in order to have knowingly possessed it? And so the length of time was important, and this jury instruction was important. In this case, there were three errors that were committed, and they had a huge impact. They affected the defendant's credibility as a witness in a huge way, and his testimony was the linchpin of the defense case. It impacted the jury's understanding of the charges and what they needed to do to come back with a verdict, whether the verdict was of acquittal or guilt. And it impacted the defendant's ability to tender a lesser-included instruction because his attorney simply misunderstood the law. These three errors resulted in a situation where... But for counsel's errors, the result of this trial with this jury would have been different. If... your honors have no further questions. I see none. Thank you, counsel. We'll take this amendment and rise and be in recess until 11.30.